1  Scott L. Metzger (Bar No. 89718)
2  Anna F. Roppo (Bar No. 132680)
   **DUCKOR SPRADLING METZGER & WYNNE**
3  A Law Corporation
   3043 4th Avenue
   San Diego, California 92103
4  (619) 209-3000; (619) 209-3043 fax

5  Attorneys for Petitioner
   FISHER INVESTMENTS, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  FISHER INVESTMENTS, INC., a        CASE NO.: CV 08 2872
    California Corporation,
12                                     PETITION TO CONFIRM ARBITRATION
                 Petitioner,           AWARD AND ENTER JUDGMENT
13                                     (9 U.S.C. § 9)
        v.
14
    ANTHONY H. THOLE, an individual,
15
                 Respondent.
16

17

18      Petitioner, FISHER INVESTMENTS, INC., a California Corporation, alleges the following

19  facts in support of this petition for an Order: (1) confirming the stipulated arbitration award; and

20  (2) entering judgment in conformity with that award.

21      **I.      PARTIES**

22      1.      Petitioner FISHER INVESTMENTS, INC. ("Fisher") is a corporation duly organized

23  and existing under the laws of the State of California, with its principal place of business at 13100

24  Skyline Boulevard, in Woodside, California 94062. Fisher is an Investment Advisor, registered

25  as such under the Investment Advisers Act of 1940. 15 U.S.C. § 80(b), et seq.

26      2.      Respondent ANTHONY H. THOLE ("Thole") is an individual whose last known

27  residence is 616 Spring Hill Bay, Woodbury, Minnesota 55125. Thole is a former employee of

28  Fisher.

DUCKOR
SPRADLING
METZGER
& WYNNE

383562.1                                          Case No. _____

## II.   JURISDICTION AND VENUE

3.   This Court has jurisdiction over this matter pursuant to Title 9, United States Code, and particularly Section 9 thereof, and under Title 28, United States Code, Section 1332. Petitioner is informed and believes, and thereon alleges, that there is complete diversity between the parties to this action, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.   The United States District Court for the Northern District of California has jurisdiction and is the proper venue in which to bring this action under Section 9 of Title 9 of the United States Code, because the stipulated arbitration award expressly provides that an action to confirm and enforce the award may be filed in the United States District Court for the Northern District of California.

## III.   ALLEGATIONS SUPPORTING PETITION

5.   Petitioner Fisher is a Registered Investment Adviser, whose clients include Fortune 500 companies, foundations, endowments, and thousands of high net worth individuals around the world. Fisher was founded in 1973 and incorporated in 1986. Fisher's Investment Policy Committee oversees the management of the assets of Fisher's customers. As discussed more fully herein, Fisher maintains a staff of various employees, some of whom solicit potential customers, others who evaluate customer objectives and discuss recommendations of the Investment Policy Committee with those customers, and others who perform various other tasks relating to the business of Fisher.

6.   Respondent Thole was employed by Fisher as an Investment Counselor from March 17, 2003 through September 30, 2004. As an Investment Counselor, Thole acted as a liaison between senior management at Fisher and its clients.

7.   As part of Thole's employment agreement, Fisher and Thole executed a "Mutual Agreement to Arbitrate Claims in the County of San Francisco" ("Arbitration Agreement") on March 17, 2003. Among other things, the Arbitration Agreement provides that all claims or controversies between Thole and Fisher, whether or not arising out of Thole's employment,

///

DUCKOR
SPRADLING
METZGER
& WYNNE

383562.1

Case No. _____

1    should be resolved through arbitration. A true and correct copy of the Arbitration Agreement is

2    attached to this petition as "Exhibit 1," and is incorporated herein by reference.

3        8.    As a condition of Thole's employment, Thole expressly agreed in an "Agreement

4    Concerning Proprietary and Confidential Information" with Fisher that the names, addresses, e-

5    mail addresses, and other confidential information relating to Fisher clients, including their

6    investment habits and special needs, was information provided in confidence by Fisher to Thole.

7    Pursuant to this Confidentiality Agreement, Thole expressly agreed that the unauthorized use or

8    disclosure of Fisher's trade secrets was unfair competition.

9        9.    Thole also executed a document entitled "Fisher Investments' Information Policy"

10    on March 17, 2003, which specifically states that broad categories of client information are

11    "proprietary property" of Fisher which is "not to be retrieved, downloaded, copied, recorded, or

12    otherwise transferred from possession of Fisher ... not to be given or conveyed in any manner,

13    shape, or form, outside the normal business operation of Fisher ... to a non-Fisher employee..."

14        10.    All Fisher confidential and proprietary material is secured through a strict

15    entitlement process. Any access to confidential and proprietary information by Fisher employees

16    is restricted such that no employee has access to any information beyond that particular

17    employee's need to know such information.

18        11.    As an Investment Counselor, Thole had access to and use of Fisher's confidential,

19    trade secret customer information, including but not limited to client lists, client names,

20    addresses, e-mail addresses, asset values, investment propensities, risk tolerance, and related

21    information which was not public information and which Fisher spent enormous resources

22    accumulating and organizing.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

DUCKOR
SPRADLING
METZGER
& WYNNE

383562.1

Case No. _____

1    12.    Thole resigned from Fisher in or about September 30, 2004, and is now affiliated

2    with Merrill Lynch, Pierce, Fenner & Smith Incorporated, located in St. Paul, Minnesota.

3    13.    In or around February, 2005, Fisher became aware of Thole's extensive use of its

4    confidential and proprietary information in connection with his solicitation of Fisher customers.

5    In response to a cease and desist letter sent from Fisher to Thole, Thole voluntarily returned

6    copies of proprietary and confidential customer lists that he had taken with him upon his

7    departure from Fisher, in direct violation of the Confidentiality Agreement and the Fisher

8    Investments' Information Policy.

9    14.    Subsequently, in or around June, 2006, Fisher became aware of Thole's continued

10    use of its confidential and proprietary information in connection with his solicitation of Fisher

11    customers.  Notwithstanding his voluntary agreement to return all confidential and proprietary

12    client lists, Fisher learned that Thole was actively using proprietary and confidential customer

13    lists and investment information in his solicitation of Fisher customers.

14    15.    Fisher initiated a demand for arbitration with the Judicial Arbitration and

15    Mediation Service ("JAMS"), as provided in the Arbitration Agreement, on or about August 21,

16    2006.  A true and correct copy of the Demand for Arbitration is attached to this Petition as

17    "Exhibit 2," and is incorporated herein by reference.

18    16.    In accordance with the provisions of the Arbitration Agreement, Fisher and Thole

19    submitted their dispute to arbitration before the Honorable Michael E. Ballachey (Ret.).  A true

20    and correct copy of the Notice of Appointment of Arbitrator is attached to this Petition as

21    "Exhibit 3," and is incorporated herein by reference.

22    17.    On or about June 13, 2007, before the commencement of the arbitration hearing,

23    Fisher and Thole informed the Honorable Michael E. Ballachey that they were able to resolve the

24    dispute through a Stipulated Injunction.  Once executed by the Arbitrator, the Stipulated

25    Injunction was intended to serve as the final Order in the arbitration proceeding.  A true and

26    correct copy of the Stipulated Injunction is attached to this Petition as "Exhibit 4," and is

27    incorporated herein by reference.

28    ///

DUCKOR
SPRADLING
METZGER
& WYNNE

383562.1

Case No. _____

18.    By executing the Stipulated Injunction, Thole agreed to pay Fisher $25,000 and was enjoined from using any confidential or proprietary information of Fisher for any purpose whatsoever.  Additionally, Thole agreed to refrain from contacting any client of Fisher for a period of one year (through April 30, 2008).  While Thole was permitted to contact clients of Fisher after this one-year period had elapsed, Thole was expressly enjoined from using any confidential or proprietary information in this process.  Moreover, Thole specifically represented that he did not have in his possession, custody or control any property or confidential information.

19.    The Stipulated Injunction was intended to be and is the final award of the Arbitrator in this proceeding.

20.    In or around May, 2008, Fisher became aware that Thole has actively violated the provisions of the Stipulated Injunction through his continued use of confidential and proprietary information in the solicitation of Fisher customers.  From May 1, 2008 through the time of the filing of the instant Petition, Thole has used confidential and proprietary information that he acquired by virtue of his former employment with Fisher in his solicitation of at least thirty (30) Fisher customers in at least twelve (12) different states.  Thole has also communicated with Fisher customers via e-mail.

21.    Fisher is informed and believes, and thereon alleges, that notwithstanding his representations to the contrary, Thole has violated the provisions of the Stipulated Injunction by maintaining in his possession lists of the identity of Fisher customers with whom he had contact while employed at Fisher, along with contact information for these persons.  Fisher is further informed and believes, and thereon alleges, that Thole is using confidential information he gained while working at Fisher in his efforts to solicit Fisher customers.

22.    Because Thole has voluntarily breached the terms of the Stipulated Injunction, a judgment on the award is needed to permit Fisher to enforce it.

23.    This petition is authorized by the terms of the Arbitration Agreement, Section 9 of the Federal Arbitration Act, and the Stipulated Injunction itself.

24.    This petition is timely because the Stipulated Injunction expressly provides that the one-year period in 9 U.S.C. § 9 within which to seek confirmation of an award is waived, together

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383562.1

Case No. _____

1    with the provisions of any statute, case law, Rule of Court, or other regulation that imposes any

2    limitation on the time within which to seek confirmation.

3         25.    Fisher's petition is based upon the above-stated facts, the Arbitration Agreement

4    (Exhibit 1), the Demand for Arbitration (Exhibit 2), the Appointment of Arbitrator (Exhibit 3),

5    and the Stipulated Injunction (Exhibit 4).  Fisher will file points and authorities and an additional

6    declaration prior to the hearing on this petition.

7         WHEREFORE, PETITIONER MOVES:

8         26.    That an Order of this Court issue, confirming the Stipulated Injunction;

9         27.    That judgment be entered in conformity with the Stipulated Injunction;

10        28.    That petitioner be allowed the costs incurred in bringing this petition; and,

11        29.    That petitioner be awarded such other and further relief as the Court deems just

12   and proper under the circumstances

13

14   DATED: June 5, 2008                    DUCKOR SPRADLING METZGER & WYNNE
                                            A Law Corporation
15

16

17                                          By: _____
                                                SCOTT L. METZGER
18                                              ANNA F. ROPPO
                                                Attorneys for Petitioner
19                                              FISHER INVESTMENTS, INC.

20

21

22

23

24

25

26

27

28

DUCKOR
SPRADLING
METZGER
& WYNNE

383562.1                                                        Case No. _____

**Exhibit 1**

# MUTUAL AGREEMENT TO ARBITRATE CLAIMS IN THE COUNTY OF SAN FRANCISCO, CALIFORNIA

I recognize that differences may arise between Fisher Investments, Inc. ("the Company") and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Mutual Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining the benefits of a speedy, impartial, final and binding dispute-resolution procedure.

Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, or held not to require arbitration of a particular claim or claims, state law pertaining to agreements to arbitrate shall apply. I agree that venue will be in the County of San Francisco, in the State of California.

## Claims Covered by the Agreement

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against any of the following (1) the Company, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them.

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered By The Agreement."

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, California Department of Fair Employment and Housing or similar fair employment practices agency, or an administrative charge within the

jurisdiction of the National Labor Relations Board), in any way related to any claim covered by this Agreement.

## Claims Not Covered by the Agreement

Claims for workers' compensation or unemployment compensation benefits are not covered by this Agreement.

Also not covered are claims by the Company or by me for temporary restraining orders or preliminary injunctions ("temporary equitable relief") in cases in which such temporary equitable relief would be otherwise authorized by law. Such resort to temporary equitable relief shall be in aid of arbitration only, and in such cases the trial on the merits of the action will occur in front of, and will be decided by, the Arbitrator, who will have the same ability to order legal or equitable remedies as could a court of general jurisdiction.

## Time Limits for Commencing Arbitration and Required Notice of All Claims

The Company and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be void and deemed waived. I understand that the aggrieved party is encouraged to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly.

Written notice to the Company, or its officers, directors, employees or agents, shall be sent to Sherrilyn Fisher at the Company's then-current address. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based and the relief or remedy sought. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

## Representation

Any party may be represented by an attorney or other representative selected by the party.

## Discovery

Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties. Requests for additional discovery may be made to the Arbitrator selected

pursuant to this Agreement. The Arbitrator shall grant an order for such requested additional discovery that the Arbitrator finds the party requires to adequately arbitrate a claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute resolution mechanism.

Designation of Witnesses

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

Subpoenas

Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

Arbitration Procedures

The arbitration will be held under the auspices of a sponsoring organization, either the American Arbitration Association ("AAA") or Judicial Arbitration & Mediation Services ("J≡A≡M≡S"), with the designation of the sponsoring organization to be made by the party who did not initiate the claim.

The Company and I agree that, except as provided in this Agreement, the arbitration shall be in accordance with the sponsoring organization's then-current employment arbitration rules/procedures. The Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"). The arbitration shall take place in or near the city in which I am or was last employed by the Company.

The Arbitrator shall be selected as follows. The sponsoring organization shall give each party a list of eleven (11) arbitrators drawn from its panel of employment dispute arbitrators. Each party shall have ten (10) calendar days from the postmark date on the list to strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one remains. The party who did not initiate the claim shall strike first. If no common name exists on the lists of all parties, the sponsoring organization shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party initiating the claim striking first, until only one name remains. That person shall be designated as the Arbitrator.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to

-3-

the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The Arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award and written opinion in the form typically rendered in labor arbitrations no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion shall include the factual and legal basis for the award.

Either party shall have the right, within twenty (20) days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty (20) days from the date of the motion to respond. The Arbitrator thereupon shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Agreement) shall then be final and conclusive upon the parties.

Arbitration Fees and Costs

The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator; provided, however, that if I am the party initiating the claim, I will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by the Company. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and/or costs, the Arbitrator

may award reasonable attorneys' fees and/or costs to the prevailing party, applying the same standards a court would apply under the law applicable to the claim(s).

Judicial Review

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award. A party opposing enforcement of an award may bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

Interstate Commerce

I understand and agree that the Company is engaged in transactions involving interstate commerce.

Requirements for Modification or Revocation

This Agreement to arbitrate shall survive the termination of my employment and the expiration of any benefit plan. It can only be revoked or modified by a writing signed by both the Company's Chief Executive Officer and me which specifically states an intent to revoke or modify this Agreement.

Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

Construction

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect.

Consideration

The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

Not an Employment Agreement

This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this Agreement in any way alter the "at-will" status of my employment.

Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

Employee initials: _____

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Employee:                              FISHER INVESTMENTS, INC.

_____        _____
Signature of Employee                Sherrilyn Fisher

_____        _____
Print Name of Employee               CFO

_____        _____
Date                                 Date

-6-

**Exhibit 2**



**JAMS**

THE RESOLUTION EXPERTS®

# Demand or Arbitration
# Before JAMS

**TO RESPONDENT:** ANTHONY H. THOLE, an individual
<span style="font-size:smaller">(Name of the Party on whom Demand for Arbitration is made)</span>

(Address) 616 Spring Hill Bay

| | | |
|---|---|---|
| (City) Woodbury | (State) MN | (Zip) 55125 |
| (Telephone) 651-330-9334 | (Fax) | (E-Mail) |

Representative/Attorney (if known): Kathleen M. Laubenstein / Rubin Fortunato & Harbison PC
<span style="font-size:smaller">(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)</span>

(Address) 10 South Leopard Rd.

| | | |
|---|---|---|
| (City) Paoli | (State) PA | (Zip) 19301 |
| (Telephone) 610-408-2039 | (Fax) 610-854-1863 | (E-Mail) |

# FROM CLAIMANT (Name): FISHER INVESTMENTS, INC., a California corporation

(Address) 13100 Skyline Blvd.

| | | |
|---|---|---|
| (City) Woodside | (State) CA | (Zip) 94062 |
| (Telephone) 650-851-3334 | (Fax) | (E-Mail) |

Representative/Attorney of Claimant (if known): Scott L. Metzger, Esq. / Anna F. Roppo, Esq.
<span style="font-size:smaller">(Name of the Representative/Attorney for the Party Demanding Arbitration)</span>

(Address) Duckor Spradling Metzger & Wynne, 401 West A St., Ste. 2400

| | | |
|---|---|---|
| (City) San Diego | (State) CA | (Zip) 92101 |
| (Telephone) 619-231-3666 | (Fax) 619-231-6629 | (E-Mail) metzger@dsmwlaw.com |

# NATURE OF DISPUTE
Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached): See attached Statement of Claim

# ARBITRATION AGREEMENT
This demand is made pursuant to the arbitration agreement which the parties made as follows (cite location of arbitration provision & attach two (2) copies of entire agreement).

See attached Statement of Claim, Exhibit A thereto



**Demand for Arbitration**
**Before JAMS**

THE RESOLUTION EXPERTS®

---

## CLAIM & RELIEF SOUGHT BY CLAIMANT

Claimant asserts the following claim and seeks the following relief (include amount in controversy, if applicable): See attached Statement of Claim

## RESPONSE

Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

## Request for Hearing

JAMS is requested to set this matter for hearing at: <u>San Francisco, CA</u>
(Preferred Hearing Location)

Signed (Claimant): _(signature)_     Date: August 21, 2006
(may be signed by an attorney)

Print Name: Anna F. Roppo

Please include a check payable to JAMS for the required initial, non-refundable $300.00 per party deposit to be applied toward your case management fee and submit to your local JAMS office.

Updated 1/15/05
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2005 JAMS. All rights reserved.



Demand For Arbitration
Before JAMS

THE RESOLUTION EXPERTS*

## COMPLETION OF THIS SECTION IS REQUIRED FOR CLAIMS INITIATED IN CALIFORNIA

A. Please check here if this ☒ IS or ☐ IS NOT a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e):

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

    1) The contract is with a consumer party, as defined in these standards;

    2) The contract was drafted by or on behalf of the non-consumer party; and

    3) The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

    1) An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;

    2) An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;

    3) An individual with a medical malpractice claim that is subject to the arbitration agreement; or

    4) An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

B. If this is an EMPLOYMENT matter, Claimant must complete the following information:

Effective January 1, 2003, private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

Annual Salary:
    ☒ Less than $100,000    ☐ More than $250,000
    ☐ $100,000 to $250,000    ☐ Decline to State

C. Consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information.

Updated 1/15/05
Resolution Centers Nationwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2005 JAMS. All rights reserved.

1   Scott L. Metzger (Bar No. 89718)
    Anna F. Roppo (Bar No. 132680)
2   **DUCKOR SPRADLING METZGER & WYNNE**
    A Law Corporation
3   401 West A Street, Suite 2400
    San Diego, California 92101
4   (619) 231-3666; (619) 231-6629 fax

5   Attorneys for Claimant FISHER INVESTMENTS,
    INC., a California Corporation

6

7

8                            JAMS ARBITRATION

9

10  FISHER INVESTMENTS, INC., a            JAMS CASE NO.:
    California Corporation,
11                                          **STATEMENT OF CLAIM**
                   Claimant,
12
           v.
13
    ANTHONY H. THOLE, an individual
14
                   Respondent.
15

16

17         Claimant FISHER INVESTMENTS, INC. ("Fisher") alleges as follows:

18                            **PARTIES AND VENUE**

19         1.    Claimant Fisher is a corporation organized and existing under the laws of the State

20  of California, with its principal place of business at 13100 Skyline Boulevard, in Woodside,

21  California 94062.   Fisher is an Investment Adviser, registered as such under the Investment

22  Advisers Act of 1940.  15 U.S.C. § 80b, et seq.

23         2.    Respondent Anthony H. Thole ("Thole") is an individual whose last known

24  residence address is 616 Spring Hill Bay, Woodbury, MN 55125.  Thole is a former employee of

25  Fisher.

26         3.    Fisher employed Thole from March 17, 2003 through September 30, 2004.

27         4.    Fisher and Thole executed a "Mutual Agreement to Arbitrate Claims in the County

28  of San Francisco California" ("Arbitration Agreement") on March 17, 2003.  A true and accurate

DUCKOR
SPRADLING
METZGER
& WYNNE
357537.1

copy of said Arbitration Agreement is attached hereto as Exhibit "A" and its terms are incorporated by this reference as though fully set forth herein.

## FACTS

5.    Fisher is a Registered Investment Adviser, whose clients include Fortune 500 companies, foundations, endowments, and thousands of high net worth individuals around the world. Fisher was founded in 1973 and incorporated in 1986. Fisher's Investment Policy Committee oversees the management of the assets of Fisher's customers. As discussed more fully below, Fisher maintains a staff of various employees, some of whom solicit potential customers, others who evaluate customer objectives and discuss recommendations of the Investment Policy Committee with those customers, and others who perform various other tasks relating to the business of Fisher.

6.    Thole was an Investment Counselor with Fisher. As such, he acted as a liaison between senior management at Fisher and its clients. In this position, Thole had access to the client and contact information for Fisher clients.

7.    As a condition of Thole's employment with Fisher, and the many benefits that he received from Fisher, Thole expressly agreed in an "Agreement Concerning Proprietary and Confidential Information" with Fisher that the names, addresses, e-mail addresses and other confidential information relating to Fisher clients, including their investment habits and special needs, was information provided in confidence by Fisher to him. Thole further agreed that such information constituted a trade secret of Fisher and that its sale, unauthorized use or disclosure would constitute unfair competition.

8.    Thole executed the "Agreement Concerning Proprietary and Confidential Information" ("Confidentiality Agreement") which specifically states that broad categories of client information are "proprietary and confidential" and that the information constitutes a trade secret of Fisher. Pursuant to this Confidentiality Agreement, Thole expressly agreed that the sale or unauthorized use or disclosure of Fisher's trade secrets was unfair competition. A true and accurate copy of the Fisher Confidentiality Agreement executed by Thole is attached hereto as Exhibit "B" and incorporated by this reference as though fully set forth herein.

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 2 -
STATEMENT OF CLAIM

9.     Thole executed a document entitled "Fisher Investments Information Policy" on March 17, 2003, which specifically states that broad categories of client information are "proprietary property" of Fisher which is "not to be retrieved, downloaded, copied, recorded, or otherwise transferred from possession of Fisher...not to be given or conveyed in any manner, shape, or form, outside the normal business operation of Fisher...to a non-Fisher employee...." A true and accurate copy of the Fisher Investments Information Policy executed by Thole is attached hereto as Exhibit "C" and incorporated by this reference as though fully set forth herein.

10.     During the term of Thole's employment with Fisher, Fisher provided him with extensive information concerning its clients and potential clients.   Leads and clients were secured over a number of years with the expenditure of enormous financial resources and tremendous amounts of time.  Fisher obtained these quality leads by, among other things, sending out direct mail, brochures, DVDs, CD-ROMs and other print media.   Before these quality leads were provided to Thole, Fisher had pre-qualified them by obtaining complete and necessary contact data, including but not limited to e-mail addresses, insuring that the leads met Fisher's minimum investment policies and also confirming that the leads had indicated interest in the services that Fisher had to offer them.

11.     As an employee of Fisher, Thole had access to and use of Fisher's confidential, trade secret customer information, including but not limited to client lists, client names, addresses, e-mail addresses, asset values, investment propensities, risk tolerance, and related information which was not public information and which Fisher spent enormous resources accumulating and organizing.

12.     Thole resigned from Fisher in or about September 2004, and is now affiliated with Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), located in St. Paul, Minnesota.

13.     Thole was in possession of Fisher's trade secret and confidential information when he left Fisher, including but not limited to client and prospective client identities and account information.

///

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 3 -
STATEMENT OF CLAIM

14.   Fisher is informed and believes and based thereon alleges that Thole has been using Fisher's trade secret confidential information to solicit Fisher clients since resigning from Fisher.

15.   Fisher is informed and believes and based thereon alleges that Thole has made direct contacts with Fisher customers, including contact by use of Fisher customers' e-mail addresses, and using Fisher trade secret and confidential information which Thole obtained while employed by Fisher, in an attempt to have those customers transfer all of or at least a portion of their assets to Merrill Lynch.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

16.   Fisher incorporates by reference each and every allegation contained in paragraphs 1 through 15 above as though fully set forth herein.

17.   Pursuant to the terms of the Confidentiality Agreement and the Fisher Investments Information Policy, Thole expressly agreed to comply with all of Fisher's policies regarding the treatment and retention of trade secret and confidential information, particularly after he resigned from Fisher.

18.   Fisher performed all obligations required of it pursuant to the Confidentiality Agreement and the Fisher Investments Information Policy.

19.   Thole breached his obligations under the Confidentiality Agreement and the Fisher Investments Information Policy as set forth in detail above.

20.   Fisher has suffered monetary damages as a direct result of Thole's breach of contract and policies described herein, in an amount according to proof at the time of arbitration, in addition to attorneys' fees and costs related thereto.

### SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

21.   Fisher incorporates by reference each and every allegation contained in paragraphs 1 through 20 above as though fully set forth herein.

///

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 4 -
STATEMENT OF CLAIM

22.    In the course of its business, Fisher developed and has maintained a list of its customers ("customer list"). This list contains the identity of its customers, their addresses, their e-mail addresses and related contact information, each customer's preferences and desires as to investment strategies, and financial accommodations granted each customer ("customer information" or "confidential customer information"). The customer list was developed over a substantial period of time, required substantial money and resources to compile, is unavailable to the public or to others in the registered investment adviser industry, and would be of great value to Fisher's competitors, like Merrill Lynch.

23.    The customer list and customer information has been the subject of tremendous efforts by Fisher to maintain its confidentiality, including restricting access thereto to only those employees of Fisher who must use the customer list and customer information in performing their jobs, ensuring that employees execute the Confidentiality Agreement and the Fisher Investments Information Policy regarding the retention and protection of confidential customer information.

24.    Thole, having been employed as an Investment Counselor with Fisher, was entrusted with access to and protection of the customer list and confidential customer information. In fact, he acknowledged in writing his duty to protect Fisher's customer list and confidential customer information.

25.    Fisher is informed and believes, and on that basis alleges, that Thole intends to compete with Fisher by supplying similar financial investment services to Fisher's customers in direct competition with Fisher, using information derived from his knowledge of the contents of the customer list and confidential customer information.

26.    Fisher is informed and believes, and on that basis alleges, that while employed by Fisher, and continuing to the present, Thole improperly misappropriated portions of the customer list and confidential customer information by secretly and without permission copying the customer list and confidential customer information and then by leaving the employ of Fisher

///

///

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 5 -
STATEMENT OF CLAIM

and setting up business with Merrill Lynch to sell the same investment strategies and advice as Fisher to Fisher's customers, using Fisher's customer list and confidential customer information and requesting that Fisher's customers do business with Thole and Merrill Lynch.

27.    The acts of Thole as alleged constitute misappropriation of trade secrets and unfair competition.

28.    As a proximate result of Thole's acts of misappropriation and threatened use of Fisher's trade secrets, Thole will be unjustly enriched.

29.    As an additional proximate result of Thole's acts of misappropriation, Fisher has sustained, and unless this court intervenes to restrain Thole's conduct, Fisher will continue to sustain, great and irreparable injury in that Fisher will lose customers and accounts, causing injury to Fisher's shareholders and employees.  Fisher has no adequate remedy at law for these injuries and unless Thole is restrained from using the customer list and confidential customer information in the future, Fisher will be compelled to continue to bring suits to protect its interests.

## THIRD CAUSE OF ACTION

### (Unfair Competition)

30.    Fisher incorporates by reference each and every allegation contained in paragraphs 1 through 29 above as though fully set forth herein.

31.    At all times mentioned in this statement of claim, Fisher has been a registered investment adviser providing investment strategies and services to its clients throughout the world. Thole, now employed by Merrill Lynch, is in direct competition with Fisher.

32.    Thole was employed by Fisher as an Investment Counselor.

33.    As a result of his employment with Fisher, and while in a position of responsibility, trust, and confidence, Thole became intimately familiar with Fisher's operations, and was granted access to and gained knowledge of numerous trade secrets and confidential and proprietary information that are the property of Fisher, including, without limitation, the following:

///

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 6 -
STATEMENT OF CLAIM

a.    the identities of and detailed information related to Fisher's customers including but not limited to customers' e-mail addresses;

b.    detailed information related to Fisher's entire marketing and advertising program;

c.    details of the techniques and materials used in the marketing and advertising of Fisher's services;

d.    knowledge of Fisher's customer preferences.

34.    Fisher is informed and believes and based thereon alleges that, while still employed by Fisher and afterwards, Thole disclosed some or all of the trade secrets and confidential and proprietary information of Fisher that Thole obtained in the course of his employment with Fisher.

35.    Fisher is further informed and believes and based thereon alleges that, in the course of competing with Fisher, Thole has used the trade secrets and confidential and proprietary information of Fisher for his benefit and for the profit and benefit of his current employer, Merrill Lynch.  This wrongful use and disclosure by Thole and wrongful use by Merrill Lynch of Fisher's trade secrets and confidential and proprietary information entrusted to Thole, has given Thole a substantial competitive advantage to which he is not entitled.

36.    Thole has wrongfully misappropriated, or has attempted to wrongfully misappropriate, Fisher's trade secrets, confidential and proprietary information, reputation, and goodwill.  Such actions are likely to mislead the public and constitute unfair competition. Thole's actions also constitute a violation of the Uniform Trade Secrets Act and California Business & Professions Code section 17200, et seq.

37.    As a direct and proximate result of Thole's conduct, Thole received and continues to receive profits that rightfully belong to Fisher.

## FOURTH CAUSE OF ACTION

### (Injunctive Relief against Thole)

38.    Fisher incorporates by reference each and every allegation contained in paragraphs 1 through 37 above as though fully set forth herein.

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 7 -
STATEMENT OF CLAIM

39.    The above practices are unfair and are breaches of Thole's agreements with Fisher.

40.    The unfair business practices and breaches by Thole are likely to continue and therefore present a continuing threat to Fisher's business.

41.    By virtue of the foregoing, and as set forth in more detail above, Fisher has valid claims and causes of action against Thole, and therefore a likelihood of success on the merits of its claim.

42.    Fisher has no adequate remedy at law and will be irreparably harmed.

43.    A balancing of the equities in this case favors the issuance of a permanent injunction against Thole.

### PRAYER

WHEREFORE, Fisher prays for monetary damages and other relief against Thole, as follows:

1.    For compensatory damages according to proof;

2.    For prejudgment interest, accruing at the legal rate, until the time of judgment;

3.    For a permanent injunction prohibiting Thole from:

a.    destroying or disposing of any documents memorializing any part of Fisher's trade secrets or confidential or proprietary information;

b.    disclosing or using Fisher's trade secrets or confidential and proprietary information and requiring Thole to return to Fisher all documents memorializing any part of Fisher's trade secrets or confidential or proprietary information;

c.    continuing to act in a manner that violates Thole's contractual obligations to Fisher;

d.    unfairly competing with Fisher, misappropriating Fisher's advertising, trade secrets and confidential and proprietary information, and wrongfully interfering with Fisher's continuing and prospective economic relations with Fisher's customers or prospective customers;

///

DUCKOR
SPRADLING
METZGER
& WYNNE

357537.1

- 8 -
STATEMENT OF CLAIM

1      4.     Pursuant to the equitable powers of the court, restitution to Fisher from Thole of

2  all funds acquired by means of any practice determined to constitute unfair competition;

3      5.     For recovery of Fisher's reasonable attorneys' fees and costs, pursuant to the

4  Arbitration Agreement and applicable statutes, in an amount according to proof; and

5      6.     For such other and further relief as the Arbitrator may deem just and proper.

6

7  DATED: August 21, 2006          DUCKOR SPRADLING METZGER & WYNNE
                          A Law Corporation

8

9

10                    By: _____
                          SCOTT L. METZGER

11                        ANNA F. ROPPO
                        Attorneys for Claimant FISHER

12                        INVESTMENTS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 3**



**THE RESOLUTION EXPERTS**

# APPOINTMENT OF ARBITRATOR

December 1, 2006

NOTICE TO ALL PARTIES
(Please See Service List)

     Re:    Fisher Investments, Inc. vs. Thole, Anthony H.
            Reference #: 1100048547

Dear Parties:

Hon Michael E. Ballachey (Ret.) has been appointed as Arbitrator in the above-referenced matter. Please note that in accordance with the JAMS Rules no party may have *ex-parte* communications with the Arbitrator. Any necessary communication with the Arbitrator must be initiated through the case manager.

Hon Michael E. Ballachey (Ret.) shall bill as indicated in the attached fee schedule. JAMS may also reassess the case management fee based on the number of hours of service. Because this is a consumer matter, JAMS will administer the arbitration consistent with JAMS Policy on Consumer Arbitrations, Minimum Standards of Procedural Fairness, a copy of which is enclosed. We require the non-consumer party to pay 100% of the cost of the arbitration and will bill Respondents accordingly, unless Respondents object in writing. Under appropriate circumstances, the arbitrator may award against any party JAMS' fees and expenses. In California, the arbitration provision may not require the consumer to pay the fees and costs incurred by the opposing party if the consumer does not prevail, and we will not enforce such a provision in the parties' agreement. JAMS' agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in arbitration.

I will be in contact with all parties shortly to schedule a Preliminary Arbitration Management Conference Call.

Sincerely

Cindy L. Cravalho
Senior Case Manager
CCravalho@jamsadr.com
FAX# 925-938-6732



JAMS Policy on Employment Arbitration
Minimum Standards of
Procedural Fairness

**THE RESOLUTION EXPERTS®**

## Introduction

This document presents the principles and policies of JAMS on the use of arbitration for resolving employment-related disputes. These policies include the "Minimum Standards of Procedural Fairness," which apply to arbitrations based on pre-dispute agreements that are required as a condition of employment. JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards.

JAMS continues to urge employers and employees to use, at the earliest point possible, mediation and other ADR processes that encourage consensual resolution of disputes in a fair, affordable, and efficient manner. We also recommend that employers consult with counsel when considering, drafting, or implementing pre-dispute arbitration clauses that relate to statutory employment claims.

## A.    Preference for Mediation and Voluntary Arbitration

JAMS encourages the use of mediation and of voluntary arbitration that is not a condition of initial or continued employment. JAMS does not take a position on the enforceability of condition-of-employment arbitration clauses, but it monitors developments in courts, legislatures and regulatory agencies concerning the enforceability of the clauses. If courts rule definitively that such clauses are unenforceable, or if laws or regulations proscribe their use, JAMS will comply with the rulings or laws in the applicable cases or jurisdictions. Absent such proscriptions, JAMS accepts arbitration assignments based on condition-of-employment clauses (provided the Minimum Standards are met), but does not encourage the use of such clauses.

## B.    Minimum Standards of Procedural Fairness

If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the "Minimum Standards of Procedural Fairness for Employment Arbitration."

## Standard No. 1:  All remedies available.

All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, must remain available in the arbitration. Post-arbitration remedies, if any, must remain available to an employee.

*Comment:* This standard does not make any change in the remedies available. Its purpose is to ensure that the remedies available in arbitrations and court proceedings are the same. JAMS does not object if an employer chooses to limit its own post-arbitration remedies.

## Standard No. 2:  Arbitrator Neutrality.

The arbitrator(s) must be neutral, and an employee must have the right to participate in the selection of the arbitrator(s).

### Standard No. 3:  Representation by Counsel.

The agreement or clause must provide that an employee has the right to be represented by counsel. Nothing in the clause or procedures may discourage the use of counsel.

### Standard No. 4:  Access to Information/Discovery.

The procedures must provide for an exchange of core information prior to the arbitration.

*Comment:* Generally this discovery should include at least (a) exchange of relevant documents, (b) identification of witnesses, and (c) one deposition for each side, i.e., of the employee and of a supervisor or other decision-maker of the employer. Other discovery should be available at the arbitrator's discretion.

### Standard No. 5:  Presentation of Evidence.

At the arbitration hearing, both the employee and the employer must have the right to (a) present proof, through testimony and documentary evidence, and (b) to cross-examine witnesses.

### Standard No. 6:  Costs and Location Must Not Preclude Access to Arbitration.

An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration. The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

*Comment:* JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses.

### Standard No. 7:  Mutuality.

JAMS will not administer arbitrations pursuant to clauses that lack mutuality. Both the employer **and the** employee must have the same obligation (either to arbitrate or go to court) with respect to the same kinds of claims.

### Standard No. 8: Written Awards.

An arbitration award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, awarded as to each claim. The Arbitrator will also provide a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the award is based.

\* \* \*

If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards. In assessing whether the

standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

### C.    Questions About Enforcement and Arbitrability

If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination. If there is no judicial determination within a reasonable period of time, JAMS will resolve questions of arbitrability under the applicable JAMS Arbitration Rules and Procedures for Employment Disputes.

### D.    Other

Parties to an employment arbitration may choose to follow the Arbitration Rules and Procedures for Employment Disputes that were developed by JAMS. These Rules and Procedures exceed the Minimum Standards by providing further procedural protections, including additional discovery and an optional appeal process, to all parties in an employment arbitration.

JAMS supports the application of the "Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out Of The Employment Relationship" to arbitrations based on condition-of-employment clauses. Announced in May 1995, the Protocol was developed by a diverse task force of representatives of (a) committees of the American Bar Association, including those addressing employer interests, (b) the National Academy of Arbitrators, and (c) the National Employment Lawyers Association. JAMS Arbitration Rules and Procedures for Employment Disputes are consistent with the Due Process Protocol.

JAMS is committed to ensuring that all staff who work on employment-related dispute resolution issues are aware of these principles and policies. Internal controls are used to ensure knowledge and compliance by the staff, and to ensure that the company's marketing activities in the employment area do not give rise to any actual or perceived conflict of interest on the part of JAMS or its neutrals.

*Note: These Minimum Standards do not apply if the agreement to arbitrate was individually negotiated by the employee and employer and the employee was represented or advised by counsel during the negotiations.*

© Copyright 2005 JAMS. All rights reserved.

## PROOF OF SERVICE BY U.S. MAIL

I, Erin Walsh, not a party to the within action, hereby declare that on December 1, 2006 I served the attached Appointment of Arbitrator and Disclosures on the parties in the within action by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, Walnut Creek, CALIFORNIA, addressed as follows:

Scott L. Metzger Esq.
Duckor Spradling Metzger & Wynne
401 W. 'A' St.
Suite 2400
San Diego, CA 92101
619-231-3666
619-231-6629 (fax)

Steven H. Winick Esq.
Sheppard, Mullin, Richter & Hampton
Four Embarcadero Center
Suite 1700
San Francisco, CA 94111  USA
415-434-9100
415-434-3947 (fax)

I declare under penalty of perjury the foregoing to be true and correct. Executed at Walnut Creek, CALIFORNIA, on December 1, 2006.

Erin Walsh

**Exhibit 4**

1   Scott L. Metzger (Bar No. 89718)
    Anna F. Roppo (Bar No. 132680)
2   DUCKOR SPRADLING METZGER & WYNNE
    A Law Corporation
3   3043 4th Avenue
    San Diego, California 92103
4   (619) 209-3000; (619) 209-3043 fax

5   Attorneys for Claimant FISHER INVESTMENTS,
    INC., a California Corporation
6

7

8                           JAMS ARBITRATION

9

10  FISHER INVESTMENTS, INC., a          JAMS Case No. 110004857
    California Corporation,
11
                    Claimant,            STIPULATED INJUNCTION
12
13              v.

14  ANTHONY H. THOLE, an individual,

15                  Respondent.

16          Claimant Fisher Investments, Inc. ("FISHER") and respondent Anthony H. Thole

17  ("THOLE") by and through their undersigned counsel hereby stipulate and agree as follows:

18                              **RECITALS**

19          1.      Respondent ANTHONY H. THOLE ("THOLE") was employed by Claimant

20  FISHER INVESTMENTS, INC. ("FI") between March 17, 2003, and September 30, 2004, as an

21  Investment Counselor ("IC"). The terms of THOLE's employment are set forth in the

22  Agreement Concerning Proprietary and Confidential Information attached hereto as Exhibit "A".

23          2.      On or about August 21, 2006, FISHER initiated this proceeding by filing its

24  Statement of Claim with Judicial Arbitration & Mediation Services ("JAMS").

25          3.      Thole filed his answering statement on or about September 6, 2006.

26          4.      The parties have agreed that the undersigned arbitrator, duly appointed by JAMS,

27  has jurisdiction over this matter.

28          5.      The parties jointly agree it would be advantageous to settle this matter.

DUCKOR
SPRADLING
METZGER
& WYNNE                                  STIPULATED INJUNCTION

370090.1

Received Time Jun. 16. 2007 11:16AM No. 0650
RECEIVED TIME   JUN. 18.   8:27AM

## STIPULATION

NOW, THEREFORE, the parties stipulate as follows:

1.    For a period of one year, from May 1, 2007 through April 30, 2008, Respondent THOLE shall not contact, in any form whatsoever, any client of FISHER INVESTMENTS whom he serviced while at FISHER or whose identity or contact information he learned while at FISHER. If THOLE inadvertently contacts any such person, he shall immediately inform such person that THOLE is a former employee of FISHER INVESTMENTS, INC., and as such, must cease all communications with any such person until such time as the period of this Stipulated Injunction shall expire. THOLE may respond to unsolicited inquires.

2.    THOLE shall not use any Proprietary and Confidential Information (as that term is defined in section 2.2 of his Agreement Concerning Proprietary and Confidential Information, Exhibit A hereto) for any purpose whatsoever, including but not limited to contacting FISHER clients, or disclose any Proprietary and Confidential Information to any third party.

3.    Notwithstanding the preceding paragraph, after the passage of one year, from May 1, 2007 through April 30, 2008, THOLE is not precluded from contacting FISHER clients he previously serviced while at FISHER.

4.    THOLE hereby represents he does not have in his custody, possession, or control any Proprietary or Confidential Information (as those terms are defined in his Agreement Concerning Proprietary and Confidential Information).

5.    THOLE shall pay to FISHER $25,000 within 10 business days of notice of the entry of this Stipulated Injunction by the arbitrator.

6.    THOLE stipulates to the jurisdiction of the United States District Court for the Northern District of California should any action be taken to have this Stipulated Injunction confirmed and entered as a judgment.

7.    Upon a showing of THOLE's violation of any term of this Stipulated Injunction, FISHER is entitled to have this Stipulated Injunction confirmed and entered as a judgment in the Northern District of California. FISHER shall not seek to have this Stipulated Injunction

///

1  confirmed and entered as a judgment absent a belief that THOLE violated any term of the

2  Stipulated Injunction.

3      8.      The one-year period provided by 9 USC § 9 within which to seek confirmation of

4  an award is waived together with the provisions of any statute, case law, Rule of Court or

5  regulation that imposes any limitation on the time within which to seek confirmation of this

6  Stipulated Injunction.

7      9.      This Stipulation shall not be admissible to prove prior wrongdoing by THOLE.

8      10.     This Stipulated Injunction is the final Order issued in this proceeding, which shall

9  terminate, with no further relief to either party, upon the Arbitrator's execution of this Order.

10          SO STIPULATED:

11

12  DATED: _____6/12/07_____

13

14                                          By: _____
                                            SCOTT L. METZGER
15                                          ANNA F. ROPPO
                                            Attorneys for Claimant FISHER
16                                          INVESTMENTS, INC.

17  DATED: ___Jun 13 2007___          SHEPPARD MULLIN RICHTER & HAMPTON
                                      LLP
18

19                                          By: _____
                                            ROBERT J. STUMPF, JR.
20                                          STEVEN H. WINICK
                                            Attorneys for Respondent ANTHONY H.
21                                          THOLE

22          IT IS SO ORDERED.

23  DATED: _____6/11/07_____

24                                          _____
                                            MICHAEL E. BALLACHEY
25                                          Judge of the Superior Court (Ret.)
                                            JAMS Arbitrator

26

27

28

DUCKOR
SPRADLING
METZGER
& WYNNE

870890.1                          - 3 -
                        STIPULATED INJUNCTION

DUCKOR SPRADLING METZGER & WYNNE
A Law Corporation