Scott L. Metzger (Bar No. 89718)
Anna F. Roppo (Bar No. 132680)
**DUCKOR SPRADLING METZGER & WYNNE**
A Law Corporation
3043 4th Avenue
San Diego, California 92103
(619) 209-3000; (619) 209-3043 fax

Attorneys for Petitioner FISHER INVESTMENTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISHER INVESTMENTS, INC., a California Corporation,<br><br>              Petitioner,<br><br>    v.<br><br>ANTHONY H. THOLE, an individual,<br><br>           Respondent. | CASE NO.: 08-2872 SC<br><br>NOTICE OF HEARING ON PETITION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT<br>(9 U.S.C. § 9)<br><br>DATE:     September 19, 2008<br>TIME:     10:00 a.m.<br>CRTRM:  One<br>JUDGE:  Hon. Samuel Conti |

PLEASE TAKE NOTICE that on September 19, 2008, at 10:00 a.m. in Courtroom One of the above-entitled Court, Petitioner FISHER INVESTMENTS, INC., will move the Court to confirm the stipulated arbitration award dated June 16, 2007.

The hearing will be based on this motion, the accompanying Memorandum of Points and Authorities, and the supporting Declaration of Damian Ornani. This hearing is further based

///
///
///
///
///
///

1  upon the records and files in this case, and upon such other oral and documentary evidence as the

2  Court may allow at the hearing.

3

4  DATED:  August 6, 2008

DUCKOR SPRADLING METZGER & WYNNE
A Law Corporation

5

6  By:  _Anna F. Roppo_____

7  SCOTT L. METZGER
   ANNA F. ROPPO

8  Attorneys for Petitioner FISHER INVESTMENTS,
   INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

386348.1

- 2 -

NOTICE OF HEARING ON PETITION TO CONFIRM
ARBITRATION AWARD AND ENTER JUDGMENT
Case No. 08-2872 SC

1  Scott L. Metzger (Bar No. 89718)
   Anna F. Roppo (Bar No. 132680)
2  **DUCKOR SPRADLING METZGER & WYNNE**
   A Law Corporation
3  3043 4th Avenue
   San Diego, California 92103
4  (619) 209-3000; (619) 209-3043 fax

5  Attorneys for Petitioner
   FISHER INVESTMENTS, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  FISHER INVESTMENTS, INC., a            CASE NO.: 08-2872 SC
    California Corporation,
12                                         MEMORANDUM OF POINTS AND
                     Petitioner,           AUTHORITIES IN SUPPORT OF PETITION TO
13                                         CONFIRM ARBITRATION AWARD AND
         v.                                ENTER JUDGMENT
14                                         (9 U.S.C. § 9)
    ANTHONY H. THOLE, an individual,
15                                         Hon. Samuel Conti (Courtroom One)
                     Respondent.           Date:  September 19, 2008
16                                         Time:  10:00 a.m.

17

18       Petitioner, FISHER INVESTMENTS, INC. ("Fisher") respectfully submits the following

19  memorandum of points and authorities in support of its petition to confirm the arbitrator's award

20  and enter a conforming judgment against Respondent ANTHONY H. THOLE ("Thole").

21  **I.    INTRODUCTION**

22       Petitioner Fisher brings this petition under Section 9 of the Federal Arbitration Act (9

23  U.S.C. § 9), seeking an order confirming an arbitration award of $25,000 and substantial

24  injunctive relief due to Fisher.  The stipulated arbitration award is the result of a dispute arising

25  from written employment agreements, including an arbitration agreement that is subject to the

26  Federal Arbitration Act.

27       The District Court for the Northern District of California has jurisdiction over this action

28  pursuant to Section 9 of Title 9 of the United States Code, because the arbitration award was

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383577.1

- 1 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

1   made in San Francisco, California, and because the Stipulated Injunction provides that Fisher is

2   entitled to seek confirmation of the award as a judgment in the Northern District of California.

3   Federal jurisdiction is proper under Section 1332 of Title 28 of the United States Code because

4   there is complete diversity, and because the amount in controversy exceeds $75,000.

5          There can be no dispute that an agreement to arbitrate exists.  There can be no dispute that

6   Fisher and Thole submitted their dispute to JAMS for a final resolution by arbitration.  Pursuant

7   to the award of the arbitrator in the form of a Stipulated Injunction, all issues related to the

8   dispute have now been resolved.  There are no grounds upon which the arbitrator's award may be

9   vacated, corrected, or modified.  The award must therefore be confirmed in full, and a judgment

10  entered in conformity.

11  **II.    SUMMARY OF FACTS**

12         In March of 2003, Thole went to work for Fisher as an Investment Counselor.  Investment

13  Counselors serve as liaisons between Fisher and its clients, but are not involved in the decision-

14  making process regarding clients' investments or the solicitation or acquisition of new customers.

15  The sole responsibilities of Fisher's Investment Counselors are to gather information from clients

16  regarding changes in financial goals and financial situations, and to communicate Fisher's

17  investment advice and current thoughts regarding market conditions to its clients.

18         Because of the communicative nature of their position, Investment Counselors are privy to

19  an extensive amount of highly confidential information regarding the customers of the firm,

20  including the identity and contact information, information regarding the customer's financial

21  condition, employment status, risk tolerance, investment history, as well as other information

22  gathered and maintained by Fisher to formulate appropriate investment strategies for each of its

23  customers.   While this information is strictly secured and monitored through an entitlement

24  process, Investment Counselors are generally provided access to this information because it is

25  necessary for them to be able to complete their job functions.

26         As a condition of his employment with Fisher, Thole entered into an "Agreement

27  Concerning Proprietary and Confidential Information" on March 17, 2003.    (See Ornani

28  Declaration, Exhibit A.)  Through this agreement, Thole expressly acknowledged that the names,

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383577.1

- 2 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

1   contact information, and other confidential information relating to Fisher clients were confidential

2   and proprietary, and were provided to Thole in confidence. Thole also signed a document entitled

3   "Fisher Investments' Information Policy" on March 17, 2003, which explicitly states that the

4   client information provided to Thole was "proprietary property" of Fisher which was "not to be

5   retrieved, downloaded, copied, recorded, or otherwise transferred from possession of Fisher."

6   (See Ornani Delaration, Exhibit B.)

7       Thole served as an Investment Counselor at Fisher from March 17, 2003, through

8   September 30, 2004. During this time, Thole had access to and use of Fisher's confidential and

9   proprietary customer information, including, but not limited to, client lists, client names,

10  addresses, e-mail addresses, phone numbers, asset values, investment propensities, risk tolerance,

11  and other trade secret information. After resigning from Fisher, Thole became affiliated with

12  Merrill Lynch, Pierce, Fenner & Smith, Inc., in St. Paul, Minnesota.

13      In February of 2005, Fisher learned that Thole was in possession of and using confidential

14  and proprietary customer lists from Fisher in his solicitation of Fisher customers. Fisher

15  immediately sent a cease and desist letter, and Thole responded by voluntarily returning a

16  customer list that he had maintained from his former employment with Fisher.

17      Over one year later, in or around June, 2006, Fisher learned that Thole was still in

18  possession of confidential and proprietary information, and was using that information to solicit

19  Fisher customers. In response, Fisher filed a demand for arbitration with JAMS on August 21,

20  2006, in accordance with the provisions of the Arbitration Agreement executed by Thole upon his

21  hiring by Fisher. (See Petition, Exhibit 1, Arbitration Agreement.)

22      The dispute was assigned to the Honorable Michael E. Ballachey (Ret.) on December 1,

23  2006. (See Petition, Exhibit 3, Appointment of Arbitrator.) In or around June 2007, before the

24  matter proceeded to the arbitration hearing, the parties agreed to resolve the matter with a

25  Stipulated Injunction through arms-length negotiations. In this Stipulated Injunction, Thole

26  agreed to pay Fisher $25,000 and to be permanently enjoined from using any confidential or

27  proprietary information of Fisher for any purpose whatsoever. This Stipulated Injunction was to

28  become the final order and award in the arbitration proceeding upon execution by the arbitrator.

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383577.1

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

1  (See Petition, Exhibit 4, Stipulated Injunction, ¶ 10.)  Accordingly, Judge Ballachey approved and

2  executed the Stipulated Injunction as the final award in the matter on June 16, 2007.

3  **III.    ARGUMENT**

4      The role of the District Court in an application for an order confirming an arbitration

5  award is straightforward.  The court must grant such an order unless the award is vacated,

6  modified, or corrected.  The Federal Arbitration Act ("FAA") at Section 9 of Title 9 of the United

7  States Code specifically provides that if the parties agreed that a judgment shall be entered upon

8  the arbitration award, then any party to the arbitration may apply for an order confirming the

9  award.  9 U.S.C. § 9.  Under Section 9 of the FAA, the court *must* grant such an order unless the

10  award is vacated, modified, or corrected as prescribed in Sections 10 and 11.

**A.  The Northern District of California Is the Proper Forum for Fisher's Petition Because Thole Stipulated to the Jurisdiction of the Northern District of California and Because Federal Diversity Jurisdiction Exists**

13      As a preliminary matter, Section 9 provides that "where no court is specified" in the

14  parties' agreement, then such an application may be made to the district court in and for the

15  district where the award was made.  9 U.S.C. § 9.  Here, the Stipulated Injunction expressly

16  provides that "Fisher is entitled to have this Stipulated Injunction confirmed and entered as a

17  judgment in the Northern District of California."  (See Petition, Exhibit 4, Stipulated Injunction, ¶

18  7.)  Furthermore, Thole stipulated to the jurisdiction of the District Court for the Northern District

19  of California for any actions to confirm or enforce the award.  (See Petition, Exhibit 4, Stipulated

20  Injunction, ¶ 6.)  Because the forum for the instant petition is expressly provided in the stipulated

21  arbitration award, venue is proper in the District Court for the Northern District of California.

22      Notably, "even where a petition is brought under the [FAA], a petitioner seeking to

23  confirm or vacate an arbitration award in federal court must establish an independent basis for

24  federal jurisdiction."  Carter v. Health Net of Cal., Inc., 374 F.3d 830, 833 (9th Cir. 2004).  Here,

25  federal jurisdiction is established pursuant to Section 1332 of Title 28 of the United States Code.

26  28 U.S.C. § 1332.  Complete diversity exists because petitioner Fisher is a California Corporation

27  with its principal place of business in California, while respondent Thole is a citizen of the State

28  of Minnesota.  (See Petition, ¶¶ 1, 2.)

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383577.1

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

1    The amount in controversy also exceeds $75,000.  In actions brought solely for the

2    purpose of confirming an arbitration award, the amount in controversy depends on the amount of

3    the award itself.  WILLIAM W. SCHWARZER, ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL §

4    16:62.5 (2008).  Moreover, where the relief in question is declaratory or injunctive in nature, "it is

5    well settled that the amount in controversy is measured by the value of the object of the

6    litigation." Hunt v. Wash. State Apple Advertising, 432 U.S. 333, 347 (1977); see also In re Ford

7    Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001) (citing Ridder Bros.,

8    Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944) for the proposition that the test for determining

9    the amount in controversy is the "pecuniary result to either party which the judgment would

10   directly produce.").

11   Here, the arbitration award has two components: (1) monetary relief; and (2) injunctive

12   relief.  (See Petition, Exhibit 4, Stipulated Injunction, ¶¶ 2, 5.)  Even though the monetary relief

13   in the award is limited to $25,000, the value of the injunctive relief alone is sufficient to satisfy

14   the amount in controversy requirement for federal diversity jurisdiction.  Specifically, the revenue

15   that Fisher receives from these 28 improperly solicited clients is in excess of $250,000 in a single

16   year.  (See Ornani Declaration, ¶ 17.)  Because Fisher has an extremely high client retention rate,

17   the vast majority of Fisher clients remain with Fisher for at least three years, and often for a

18   longer period.  (See Ornani Declaration, ¶ 17.)  As such, Thole's improper use of confidential and

19   proprietary information is placing well in excess of that number at risk.  (See Ornani Declaration,

20   ¶ 17.)  Thus, the value of the injunctive relief at issue in this arbitration award is over $250,000.

21   When this figure is combined with the $25,000 in monetary relief, the amount in controversy in

22   the instant petition clearly exceeds $75,000.

23   **B. Fisher is Entitled to Have the Arbitration Award Confirmed and Entered As**
   **a Judgment Because Thole Violated the Stipulated Injunction**

24

25   Section 9 of the FAA specifically provides that if the parties agreed that a judgment shall

26   be entered upon the arbitration award, then any party to the arbitration may apply for an order

27   confirming the award.  9 U.S.C. § 9.  Here, the Stipulated Injunction provides that Fisher is

28   entitled to have this Stipulated Injunction confirmed and entered as a judgment "upon a showing

DUCKOR
SPRADLING
METZGER
& WYNNE

383577.1

- 5 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

1    of Thole's violation of any term of this Stipulated Agreement." (See Petition, Exhibit 4,

2    Stipulated Injunction, ¶ 7.) Thus, Fisher can properly move this Court for an order confirming

3    the arbitration award by showing that Thole has violated the terms of the Stipulated Injunction.

4        The facts clearly demonstrate that, notwithstanding his continued assurances to the

5    contrary, Thole has violated the terms of the Stipulated Injunction by maintaining in his

6    possession customer lists and other proprietary and confidential information from Fisher.

7    Beginning in May 2008, Fisher discovered Thole's extensive solicitation efforts of Fisher

8    customers with whom he had contact while employed as an Investment Counselor at Fisher. (See

9    Ornani Declaration, ¶ 11.) Fisher has confirmed that, from May 1, 2008, through the time of the

10   filing of this Petition, Thole has sent form letters and made solicitation calls to over 28 Fisher

11   clients in over 12 states. (See Ornani Declaration, ¶ 12.) Unless Thole has a photographic

12   memory, this type of large-scale solicitation campaign simply could not be accomplished without

13   the use of Fisher's proprietary and confidential customer lists and contact information. In

14   addition, the use of e-mail communications clearly demonstrates access to non-public

15   information. (See Ornani Declaration, ¶¶ 13 and 14.) Furthermore, even if Thole was able to

16   memorize all 28 names and addresses, this would still be an improper use of Fisher's confidential

17   and proprietary information under the terms of the Stipulated Injunction.

18       Moreover, the facts indicate that Thole is using confidential and trade secret information

19   he gained while working at Fisher in his recent solicitation campaign. Specifically, the form

20   letter that Thole has sent to nearly 30 Fisher clients states that "I understand that your current

21   investment portfolio has trailed its benchmark for several years in a row now." (See Ornani

22   Declaration, Exhibit D.) Although this statement regarding the performance of accounts at Fisher

23   lacks merit, it is clear from this sentence that Thole is using his knowledge that these persons are

24   customers of Fisher in an effort to solicit them away from Fisher. (See Ornani Declaration, ¶ 15.)

25       By signing the Stipulated Injunction, Thole promised and agreed to not use any

26   proprietary and confidential information from Fisher for any purpose whatsoever, "including but

27   not limited to contacting Fisher clients...." (See Petition, Exhibit 4, Stipulated Injunction ¶ 2.)

28   As demonstrated above, Thole's most recent solicitation campaign simply could not be

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383577.1

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

accomplished without the use of Fisher's confidential and proprietary customer lists and contact information. Further, Thole is clearly using confidential information gained through his employment at Fisher in an attempt to solicit Fisher customers away from Fisher. Because Fisher is able to demonstrate a violation of the terms of the Stipulated Injunction, Fisher is entitled to have the Stipulated Injunction confirmed and entered as a judgment by the terms of the agreement itself.

## C. The Parties Submitted their Dispute to Binding Arbitration Which Resulted in a Stipulated Injunction Which Must Now Be Confirmed

The Court's review of arbitration awards is controlled by the FAA. As stressed by the Ninth Circuit on numerous occasions, judicial review of an arbitration decision is "both limited and highly deferential." Coutee v. Barrington Capital Group, L.P., 336 F.3d 1128, 1132 (9th Cir. 2003) (citing Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc., 84 F.3d 1186, 1190 (9th Cir. 1996); see also Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1080 (9th Cir. 1993) (noting that "judicial review of arbitration awards is extremely limited."). A reviewing court is "bound—under all except the most limited circumstances—to defer to the decision of [the arbitrator], even if … that … decision finds the facts and states the law erroneously." Stead Motors v. Automotive Machinists Lodge 1173, 886 F.2d 1200, 1204 (9th Cir. 1989) (en banc), cert denied, 495 U.S. 946 (1990).

The FAA enumerates only four narrow bases for vacating an arbitration award: (1) where an award is procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators are guilty of misconduct in refusing to postpone a hearing, in refusing to hear evidence pertinent and material to the controversy, or of misbehavior prejudicing the rights of the parties; and (4) where the arbitrators exceed the scope of their powers. 9 U.S.C. § 10.

None of the statutory bases for the vacation of an arbitration award are present in this proceeding. The facts show that Thole and Fisher agreed to resolve their dispute through arbitration in San Francisco. (See Petition, Exhibit 1, Arbitration Agreement.) Based on an agreement reached between the parties, the arbitrator executed a Stipulated Injunction as the final

DUCKOR
SPRADLING
METZGER
& WYNNE
383577.1                    - 7 -                    MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

award in the matter. (<u>See</u> Petition, Exhibit 4, Stipulated Injunction.) Because the award was negotiated at arms-length and agreed upon by both parties, neither party can demonstrate corruption, fraud, partiality, or other misconduct by the arbitrator. Indeed, all the arbitrator was asked to do was to review the agreement for fairness and execute it as a final award. Further, the award itself falls squarely within the scope of controversy submitted for arbitration, so it cannot be said that the arbitrator exceeded his authority in executing the Stipulated Injunction.

The Ninth Circuit recognizes only two non-statutory grounds for vacating an award. These grounds are limited to where the award (1) is completely irrational; or (2) constitutes a manifest disregard of the law. <u>G.C. & K.B. Invs. Inc. v. Wilson</u>, 326 F.3d 1096, 1105 (9th Cir. 2003). As discussed above, there are no facts in this case which support these grounds. Indeed, the parties reached an arms-length agreement to resolve the dispute through a Stipulated Injunction. In this context, it cannot be argued that the award was completely irrational or constituted a manifest disregard of the law.

As with the grounds for vacating an arbitration award, the grounds for modification are similarly circumscribed by Section 11 of the FAA. 9 U.S.C. § 11. Modification is allowed only: (1) where there was an evident material miscalculation of figures, or a mistake in a description of a person, thing or property referred to in the award; (2) where the arbitrators have awarded upon a matter not submitted to them; and (3) where the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11. As the facts above illustrate, no grounds for modification are before the court.

## IV.    CONCLUSION

The parties to this petition submitted their dispute concerning Thole's improper use of confidential and proprietary information from Fisher to binding arbitration for resolution. Pursuant to the stipulated arbitration award, Thole agreed to pay Fisher $25,000 and to be permanently enjoined from the use of any confidential or proprietary information obtained from

///

///

///

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383577.1

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION TO CONFIRM ARB AWARD
Case No. 08-2872 SC

1    Fisher. There are no grounds for vacating or modifying the award. Therefore, Fisher requests an

2    order confirming the award and an order for entry of a conforming judgment.

3

4    DATED: August 4, 2008                    DUCKOR SPRADLING METZGER & WYNNE
                                              A Law Corporation
5

6

7                                            By:

8                                                SCOTT L. METZGER
                                                 ANNA F. ROPPO
9
                                             Attorneys for Petitioner
10                                           FISHER INVESTMENTS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Scott L. Metzger (Bar No. 89718)
Anna F. Roppo (Bar No. 132680)
**DUCKOR SPRADLING METZGER & WYNNE**
A Law Corporation
3043 4th Avenue
San Diego, California 92103
(619) 209-3000; (619) 209-3043 fax

Attorneys for Petitioner
FISHER INVESTMENTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FISHER INVESTMENTS, INC., a California Corporation,<br><br>Petitioner,<br><br>v.<br><br>ANTHONY H. THOLE, an individual,<br><br>Respondent. | CASE NO.: 08-2872 SC<br><br>**DECLARATION OF DAMIAN ORNANI IN SUPPORT OF FISHER INVESTMENTS, INC.'S PETITION TO CONFIRM ARBITRATION AWARD**<br><br>Hon. Samuel Conti |

I, Damian Ornani, declare and say:

1. I am employed at Fisher Investments ("FI"). I am a Co-President of FI.

2. Respondent Anthony Thole was employed at FI between March 17, 2003 and September 30, 2004. While Mr. Thole was employed at FI, his job title was Investment Counselor.

3. At FI, Investment Counselors act as the primary liaison between the firm and each of its clients, which currently number in excess of 24,000. Investment Counselors are not involved in the solicitation or acquisition of new customers, nor are they involved at all in the decision-making process regarding clients' investments. Their sole responsibility is to communicate with clients regarding changes in a client's investment goals or financial situation

///

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION

383527.1

DECLARATION IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD
Case No. 08-2872 SC

1    and to communicate to clients FI's then-current thinking regarding market conditions and

2    appropriate investment decisions made by FI.

3        4.    In this role, Investment Counselors are privy to an extensive amount of highly

4    confidential information regarding the customers of the firm, including the identity and contact

5    information, information regarding the customers' financial condition, employment status, marital

6    status, health status, estate plans and myriad other types of information provided to FI to assist FI

7    in the formulation of an appropriate investment strategy for each of its customers.

8        5.    On March 17, 2003, Mr. Thole entered into an "Agreement Concerning

9    Proprietary and Confidential Information," a true and correct copy of which is attached hereto as

10   Exhibit A. In addition, and on that same day, Mr. Thole executed FI's Information Policy, a true

11   and correct copy which is attached hereto as Exhibit B.

12       6.    FI employed, during the entire period of Mr. Thole's employment, and continues

13   to employ extensive efforts and resources to maintain the confidentiality of information regarding

14   its customers. First, FI requires that all employees execute employment contracts which contain

15   provisions specifically dealing with confidential and trade secret information and non-disclosure

16   of same (see Exhibits A and B attached hereto). FI also provides employees with an employee

17   manual and requires their written acknowledgement of its provisions. The employee manual

18   contains extensive provisions regarding each employee's obligation to maintain the

19   confidentiality of all information regarding its costumers, and reinforce each employee

20   understanding of the confidential and propriety nature of information given to FI by its customers.

21       7.    In addition, all FI confidential and proprietary material is secured through a strict

22   entitlement process. This means that access to information regarding FI's customers is based on

23   an employee's role or job responsibility and management reporting level in the firm. Stated

24   another way, employee access to information regarding the customers of FI is restricted such that

25   no employee has access to any such information beyond that particular employee's need to know

26   such information. In the case of Investment Counselors, such as Mr. Thole, and as a result of

27   their ongoing communications with the customers of FI, Investment Counselors, including

28   Mr. Thole, have access to virtually all information regarding the customers of FI.

DUCKOR
SPRADLING
METZGER
& WYNNE
383527.1

8.    In addition to the foregoing, all confidential and proprietary information is also protected by having individual passwords set to specific documents.

9.    FI also employs robust information security environment that protects it from unwanted access from the internet. A complex series of firewalls (devises that restrict who can access its computers from outside FI local area network) and intrusion detection services (devices that prohibit and block outside attacks on our system via viruses, Trojan horses or any other known malicious network or computer incursion) are utilized at FI.

10.    I am informed and believe that, in 2006, as a result of Mr. Thole's extensive use of information that is confidential and proprietary to FI in connection with soliciting customers of FI, FI initiated an action against Mr. Thole before the Judicial Arbitration and Mediation service. That matter was resolved with Mr. Thole paying FI $25,000 together with entry of the Stipulated Injunction which is attached hereto as Exhibit C.

11.    Beginning in early May 2008. FI began receiving confirmation of extensive solicitation of customers of FI by Mr. Thole. I have confirmed that each of the persons recently contacted by Mr. Thole were persons with whom he had extensive contact while employed as an investment counselor at FI.

12.    As of the date of this declaration, FI has confirmed 28 such contacts between May 1, 2008, and the date this declaration is executed. Although we understand Mr. Thole is currently employed with Merrill Lynch in St. Paul, Minnesota, he has contacted FI clients residing in Arizona, California, Colorado, Florida, Illinois, New Mexico, New York, Ohio, Pennsylvania, South Carolina, Texas and Minnesota.

13.    The initial contact has been in the form of a letter sent by Mr. Thole to each of these persons, a true and correct copy of which attached hereto as Exhibit D, typically followed up with telephonic solicitation. We have also confirmed at least one follow-up to the letter in the form of an e-mail solicitation (Exhibit E).

14.    It is clear from this pattern of conduct that Mr. Thole, notwithstanding his express representation to the contrary, has maintained in his possession lists of the identity of FI

///

DUCKOR
SPRADLING
METZGER
& WYNNE

383527.1

- 3 -
DECLARATION IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

1   customers with whom he had contact while employed at FI, together with contact information for

2   these persons.

3       15.    It is also clear from the letter itself that Mr. Thole is using confidential information

4   he gained while working at FI.  For example, at the beginning of the last paragraph of Exhibit D,

5   Mr. Thole stated "I understand that your current investment portfolio has trailed its benchmark for

6   several years in a row now"...  Although Mr. Thole's statement regarding the performance of

7   accounts at FI is completely false, it is clear from this one sentence that Mr. Thole is using his

8   knowledge that these persons are customers of FI in an effort to solicit them away from FI.

9       16.    The assets under management at FI belonging to the clients who have been

10  solicited exceed $20 Million.

11      17.    FI typically charges a fee of 1.25% of assets under management per year.

12  Accordingly, the revenue to FI from these improperly solicited clients is equal to $250,000 in a

13  single year.  Because FI enjoys an extremely high client retention rate, the vast majority of FI

14  clients remain with Fisher for at least three years and often for a longer period.  As a result, FI

15  revenue at risk is likely well in excess of $250,000.

16      I declare under penalty of perjury under the laws of the State of California that the

17  foregoing is true and correct.

18      Executed this ____ day of August 2008, at Woodside, California.

19

20      Damian Ornani

21

22

23

24

25

26

27

28

DUCKOR
SPRADLING
METZGER
& WYNNE
A LAW CORPORATION
383527.1

- 4 -
DECLARATION IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

# EXHIBIT A

# AGREEMENT CONCERNING PROPRIETARY AND CONFIDENTIAL INFORMATION

This AGREEMENT CONCERNING PROPRIETARY AND CONFIDENTIAL INFORMATION ("Agreement") is entered into on March 17, 2003, and shall be effective as of that date, ("Effective Date"), between Anthony Thole (hereafter referred to as the "Employee") and Fisher Investments, Inc. (hereinafter referred to as "Corporation").

## RECITALS

WHEREAS, Employee is, or is about to become, an employee of Corporation, and will have access to Corporation's private, proprietary and confidential information (hereinafter "Proprietary and Confidential Information");

WHEREAS, Employee agrees that Corporation has made a substantial investment in this Proprietary and Confidential Information and/or that the Proprietary and Confidential Information includes information provided to Corporation by customers or others with an expectation that it not be disclosed to third parties;

WHEREAS, in order to protect Corporation's Proprietary and Confidential Information, and to protect Corporation from unfair competition involving the disclosure of that information, Employee has agreed to enter into this Agreement;

NOW THEREFORE, in consideration of continued employment, and other good and valuable consideration, receipt of which is hereby acknowledged, Employee and Corporation intending to be legally bound, agree as follows:

1. AT-WILL EMPLOYMENT: Nothing in this Agreement constitutes a guarantee or agreement of continued employment, or of a fixed term of employment, of Employee. Employee is an "at will" employee of Corporation. This means that either Corporation or Employee may terminate Employee's employment with Corporation at any time, with or without cause and with or without advance notice. By signing below, Employee represents that he understands that he is an at-will employee, and that this understanding supercedes any prior contradictory understanding that he may have had regarding his employment. Employee further acknowledges that his at-will status cannot be changed except in a writing signed by Employee and an officer of Corporation.

2. PROPRIETARY AND CONFIDENTIAL INFORMATION:

   2.1    Generally. Employee acknowledges and understands that he will have access to certain Proprietary and Confidential Information (as defined below) during his employment with Corporation. Employee agrees that Corporation has made a substantial investment in this Proprietary and Confidential Information and/or that the Proprietary and Confidential Information includes information provided to Corporation by customers or others with an expectation that it not be disclosed to third parties.

2.2    **Definition.** "Proprietary and Confidential Information" is defined as all information and any idea in whatever form, tangible or intangible, of a confidential or secret nature that pertains in any manner to the business of Corporation. Included within the meaning of Proprietary and Confidential Information are:

(a)    matters of a technical nature, including but not limited to:

    (i)    proprietary computer programs, software and documentation;

    (ii)    secret processes (including the investment process); and

    (iii)    research projects;

(b)    matters of a business nature, including but not limited to:

    (i)    information about contract forms, costs, profits, promotional methods, markets, sales, clients or customers, or potential clients or customers;

    (ii)    personnel matters;

    (iii)    plans for future development of the business; and

    (iv)    information provided to Corporation by third parties under a promise or expectation of confidentiality; and

(c)    any other matter constituting a "trade secret" under applicable law.

Proprietary and Confidential Information shall include both information developed by Employee for Corporation and information Employee obtained while in Corporation's employ. All Proprietary and Confidential Information, whether created by Employee or other employees, shall remain the property of Corporation. Proprietary and Confidential Information shall not include information that is available to Employee other than as a result of Employee's employment with Corporation.

2.3    **Non-Disclosure and Return.** Employee agrees to hold all Proprietary and Confidential Information in confidence and not to, directly or indirectly, disclose, use, copy, publish, summarize, sell or remove any such information at any time during or after termination of his employment with Corporation, except to the extent authorized and necessary to carry out Employee's responsibilities during the period of his employment with Corporation. Upon termination of his employment with Corporation, Employee shall immediately deliver to Corporation all property in his possession or control that belongs to Corporation, including all copies of Proprietary and Confidential Information.

2.4    **No Solicitation of Customers Using Proprietary and Confidential Information.** Employee acknowledges and agrees that the names and addresses of Corporation's customers and all other confidential information relating to those

customers, including their investment habits and special needs, have been compiled by Corporation at great expense and represent a real asset of Corporation. Employee further understands and agrees that this information is deemed confidential by Corporation and constitutes trade secrets of Corporation. Employee understands that this information has been provided to Employee in confidence, and Employee agrees that the sale or unauthorized use or disclosure of any of Corporation's trade secrets obtained by Employee during his employment with Corporation constitutes unfair competition. Employee agrees and promises not to engage in any unfair competition with Corporation. Employee further agrees that he will not, directly or indirectly, during or after termination of his employment, make known to any person, firm, or corporation any information concerning any of the customers of Corporation which, as Employee acknowledges, is confidential and constitutes trade secrets of Corporation. Nor shall Employee use any such confidential and trade secret information to solicit, take away, or attempt to call on, solicit or take away any of the customers of Corporation on whom Employee called or whose accounts Employee had serviced during his employment with Corporation, either for himself or for any other person, firm, or corporation.

2.5  **No Solicitation of Employees.** Employee agrees that he will not, either during his employment or for a period of one year after his employment has terminated, solicit any of Corporation's employees for a competing business otherwise induce or attempt to induce such employees to terminate their employment with Corporation. Employee agrees that any such solicitation during that period of time would constitute unfair competition.

3.  **EXCLUSIVITY:** Employee shall devote his entire work time, ability and attention to the business of Corporation while employed by Corporation. While employed by Corporation, Employee shall not engage in any other business duties or pursuits, or tender any services of commercial or professional nature to any other person or organization, either for compensation or otherwise, which conflict with his duties to Corporation. Nor shall Employee encourage or solicit any employee of Corporation to leave Corporation for any reason or to devote less than all of any such employee's efforts to the affairs of Corporation.

4.  **WAIVER:** The waiver of either party of a breach of any provision of this agreement shall not operate as or be construed to be a waiver of any subsequent breach.

5.  **INJUNCTIVE RELIEF:** Employee and Corporation expressly agree and understand that any breach of this Agreement will result in irreparable harm, and that the damages flowing from such breach cannot be adequately measured in monetary terms. Employee and Corporation further expressly acknowledge that the remedy at law for any breach of this Agreement will be inadequate. Accordingly, it is agreed that Employee and Corporation shall be entitled, among other remedies, to immediate injunctive relief, including a temporary restraining order, preliminary injunction and permanent injunction for any such breach or threatened breach. In addition to this injunctive relief, a breach of

any promise contained herein shall also give rise to such monetary damages as are available at law or equity.

6. **SEVERABLE PROVISIONS:** The provisions of this Agreement are severable, and if any one or more provisions may be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions or parts thereof shall nevertheless be binding and enforceable. In the event that any provision of this Agreement is deemed unenforceable, Corporation and Employee agree that a court of competent jurisdiction shall reform such provision to the extent necessary to cause it to be enforceable to the maximum extent permitted by law. Employee further agrees that, in the event any provision of this Agreement in deemed unenforceable, at the Corporation's request, Employee will execute a version of this Agreement that does not contain the provision deemed unenforceable.

7. **ASSIGNMENT:**
The rights and benefits of Corporation under this Agreement shall be transferable upon merger, consolidation, or other transfer by Corporation of its entire business interests to another corporation or corporations, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by or against its successors and assigns.

8. **GOVERNING LAW:**
This Agreement and its interpretation shall be governed by the laws of the State of California. Headings of paragraphs are for identification purposes only and are not part of the agreement.

9. **ENTIRE AGREEMENT:** All previous oral agreements and understandings between the parties hereto are superseded in their entirety by this Agreement and are deemed merged into this Agreement. This Agreement may not be amended, canceled, altered or modified except in writing, duly signed by both parties hereto.

**EXECUTED** at Woodside, California on **March 17, 2003.**

FISHER INVESTMENTS, INC.

_____
Sherrilyn A. Fisher, CFO

_____
Anthony Thole

3/17/03
_____
Date

# EXHIBIT B

# Fisher Investments Information Policy

All records pertaining to Clients, Former Clients, Future Clients, Prospects, Past Prospects, Employees, including Research Data, and any other information you have access to as a Fisher Investments Inc. employee, herein referred to as "information", is proprietary property of Fisher Investments Inc. for the sole business use of Fisher Investments Inc. This information is not to be retrieved, downloaded, copied, recorded, or otherwise transferred from possession of Fisher Investments Inc. without the written expressed permission of management. This information is also not to be given or conveyed in any manner, shape, or form, outside the normal business operations of Fisher Investments Inc., to a non-Fisher Investments Inc. employee without the expressed written consent of management. Upon termination of employment with Fisher Investments Inc., any and all information in your possession must be immediately surrendered and returned to Fisher Investments Inc.

_TONY THOLE_

Employee Name (Please Print)

_[signature]_

Employee Signature

_3/17/03_

Date

# EXHIBIT C

1  Scott L. Metzger (Bar No. 89718)
   Anna F. Roppo (Bar No. 132680)
2  DUCKOR SPRADLING METZGER & WYNNE
   A Law Corporation
3  3043 4th Avenue
   San Diego, California 92103
4  (619) 209-3000; (619) 209-3043 fax

5  Attorneys for Claimant FISHER INVESTMENTS,
   INC., a California Corporation
6

7

8                          JAMS ARBITRATION

9

10 FISHER INVESTMENTS, INC., a            JAMS Case No. 110004857
   California Corporation,
11
          Claimant,                       STIPULATED INJUNCTION
12
13     v.

14 ANTHONY H. THOLE, an individual,

15        Respondent.

16     Claimant Fisher Investments, Inc. ("FISHER") and respondent Anthony H. Thole

17 ("THOLE") by and through their undersigned counsel hereby stipulate and agree as follows:

18                              RECITALS

19     1.     Respondent ANTHONY H. THOLE ("THOLE") was employed by Claimant

20 FISHER INVESTMENTS, INC. ("FI") between March 17, 2003, and September 30, 2004, as an

21 Investment Counselor ("IC"). The terms of THOLE's employment are set forth in the

22 Agreement Concerning Proprietary and Confidential Information attached hereto as Exhibit "A".

23     2.     On or about August 21, 2006, FISHER initiated this proceeding by filing its

24 Statement of Claim with Judicial Arbitration & Mediation Services ("JAMS").

25     3.     Thole filed his answering statement on or about September 6, 2006.

26     4.     The parties have agreed that the undersigned arbitrator, duly appointed by JAMS,

27 has jurisdiction over this matter.

28     5.     The parties jointly agree it would be advantageous to settle this matter.

DUCKOR
SPRADLING
METZGER
& WYNNE
                       STIPULATED INJUNCTION

370090.1

**STIPULATION**

NOW, THEREFORE, the parties stipulate as follows:

1.     For a period of one year, from May 1, 2007 through April 30, 2008, Respondent THOLE shall not contact, in any form whatsoever, any client of FISHER INVESTMENTS whom he serviced while at FISHER or whose identity or contact information he learned while at FISHER. If THOLE inadvertently contacts any such person, he shall immediately inform such person that THOLE is a former employee of FISHER INVESTMENTS, INC., and as such, must cease all communications with any such person until such time as the period of this Stipulated Injunction shall expire. THOLE may respond to unsolicited inquires.

2.     THOLE shall not use any Proprietary and Confidential Information (as that term is defined in section 2.2 of his Agreement Concerning Proprietary and Confidential Information, Exhibit A hereto) for any purpose whatsoever, including but not limited to contacting FISHER clients, or disclose any Proprietary and Confidential Information to any third party.

3.     Notwithstanding the preceding paragraph, after the passage of one year, from May 1, 2007 through April 30, 2008, THOLE is not precluded from contacting FISHER clients he previously serviced while at FISHER.

4.     THOLE hereby represents he does not have in his custody, possession, or control any Proprietary or Confidential Information (as those terms are defined in his Agreement Concerning Proprietary and Confidential Information).

5.     THOLE shall pay to FISHER $25,000 within 10 business days of notice of the entry of this Stipulated Injunction by the arbitrator.

6.     THOLE stipulates to the jurisdiction of the United States District Court for the Northern District of California should any action be taken to have this Stipulated Injunction confirmed and entered as a judgment.

7.     Upon a showing of THOLE's violation of any term of this Stipulated Injunction, FISHER is entitled to have this Stipulated Injunction confirmed and entered as a judgment in the Northern District of California. FISHER shall not seek to have this Stipulated Injunction

///

DUCKOR
SPRADLING
MEIZGER
& WYNNE

- 2 -
STIPULATED INJUNCTION

370096.1

1  confirmed and entered as a judgment absent a belief that THOLE violated any term of the

2  Stipulated Injunction.

3        8.    The one-year period provided by 9 USC § 9 within which to seek confirmation of

4  an award is waived together with the provisions of any statute, case law, Rule of Court or

5  regulation that imposes any limitation on the time within which to seek confirmation of this

6  Stipulated Injunction.

7        9.    This Stipulation shall not be admissible to prove prior wrongdoing by THOLE.

8        10.    This Stipulated Injunction is the final Order issued in this proceeding, which shall

9  terminate, with no further relief to either party, upon the Arbitrator's execution of this Order.

10      SO STIPULATED:

11

12 DATED: ___6/12/07___      DUCKOR SPRADLING METZGER & WYNNE
                                 A Law Corporation

13

14                        By: _____

                       SCOTT L. METZGER

15                        ANNA F. ROPPO
                       Attorneys for Claimant FISHER

16                        INVESTMENTS, INC.

17 DATED: __Jun 13 2007__     SHEPPARD MULLIN RICHTER & HAMPTON
                                 LLP

18

19                        By: _____

                       ROBERT J. STUMPF, JR.

20                        STEVEN H. WINICK
                       Attorneys for Respondent ANTHONY H.

21                        THOLE

22      IT IS SO ORDERED.

23

24 DATED: ___6/11/07___     _____

                       MICHAEL E. BALLACHEY

25                        Judge of the Superior Court (Ret.)
                       JAMS Arbitrator

26

27

28

DUCKOR
SPRADLING
METZGER
& WYNNE

870090.1

- 5 -
STIPULATED INJUNCTION

# EXHIBIT D

Anthony H. Thole, CFP®, CFM
Financial Advisor

Merrill Lynch
Global Wealth Management
30 East Seventh Street, Suite 3400
St. Paul, MN 55101
(800) 825-1700
(651) 298-1747
Anthony_Thole@ml.com

 **Merrill Lynch**

May 2, 2008

Mr. Murray Shusterman
2000 Market Street
Philadelphia, PA 19103

Dear Mr. Shusterman,

    I hope you are having a great 2008! It has been awhile since we last spoke and worked together, but I wanted to give you an update on my status. I have been with Merrill Lynch's Global Wealth Management Group for roughly 4 years now; it's been a great transition for me and my clients, as I now have access to broader investment and wealth management capabilities. The reason for the length of time from our last conversation was due to contractual obligations from my prior employer, but I am now fully capable of communicating with you, which was my wish from the beginning.

    I have been thoroughly enjoying the opportunity to oversee the financial affairs of high net-worth clients again. I certainly realize that every client of mine is different, and I now have the resources to really dig deep and find out what is the most appropriate investment/asset allocation for each client. I have always believed an investor needs to have an appropriate mix of stocks, bonds, and cash, in their portfolio, if nothing else than to reduce volatility (like we're seeing today). Having 100% of your portfolio in any one asset class is very risky, and only sets you on a path of years of uncertainty, and let's be honest, a fair amount of stress. Nobody can time the market with any consistency, and I urge you to take a good look at your current situation. The majority of my high net-worth clients have worked hard to accumulate their wealth, and now look for ways to protect it and reduce the downside.

    The only way to create a smooth ride is to diversify into several different asset classes at one time. I have been building truly diversified portfolios (several asset classes) for my clients ever since we parted ways, and for several years prior to us working together in fact. During these years, I have realized that the only way to protect and grow your assets over time is by spreading your risk across several non-correlated asset classes, and I would certainly welcome an opportunity to work with you once again, and show you how I can add value to your current situation.

    I understand that your current investment portfolio has trailed its benchmark for several years in a row now, and I would like to share with you, at your convenience, why that may be and why that may continue. As a reference, I have also enclosed two booklets describing not only the importance of a fully diversified and sound investment portfolio, but going beyond investments to look at your entire financial life. I certainly enjoyed working with you, and would welcome an opportunity to come out and visit face-to-face so I could walk through my process with you. I have included my business card for your reference; and will follow up with a phone call over the next few days. Feel free to call or email me in the mean time with any questions or concerns.

Best regards,

Tony Thole

Anthony H. Thole, CFP®, CFM
Financial Advisor

Global Wealth Management
30 East Seventh Street
Suite 3400
Saint Paul, MN 55101
T 651 298 1747
T 800 825 1700
F 651 319 9242
anthony_thole@ml.com

 **Merrill Lynch**

# EXHIBIT E

From: Anthony_Thole@ml.com
To: ironsgl@aol.com
Sent: 5/20/2008 10:57:07 A.M. Central Daylight Time
Subj: Update


Hi Keith and Cynthia,

I hope all is well.  Hopefully by now you've received the letter I recently sent out.  Just wanted to get an update from you on your current status.  I've been touching base with former clients now that I am capable of doing so.  Just wondering if perhaps you might consider making a change if I was able to show you a couple of money managers that have much better performance than your current manager with much less risk?

I have been successful in converting several of the former clients I had worked with in the past and would welcome an opportunity to work with you both once again.  In the grand scheme of the investment world there are many choices out there.  Please know that when comparing managers with performance, risk, etc.  there are many other superior options available.  I hope all is well,  I tried to reach you by phone with no luck, so feel free to touch base at your convenience.



Best regards,

Tony Thole

**Anthony H. Thole, CFP®, CFM**
Merrill Lynch | Global Private Client
30 East Seventh Street | 34th Floor | St. Paul, MN 55101
(651) 298-1747 | (800) 825-1700 ext.747
anthony_thole@ml.com

**http://fa.ml.com/ANTHONY_THOLE**